IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| RAY JEFFERSON CROMARTIE, : | |
| : | |
| Petitioner, : | |
| : | |
| v. : | |
| : | CIVIL ACTION NO. 7:14-CV-39 (MTT) |
| WARDEN, GEORGIA DIAGNOSTIC : | |
| AND CLASSIFICATION PRISON, : | |
| : | |
| Respondent. : | |

### ORDER

Petitioner Ray Jefferson Cromartie filed his federal petition for a writ of habeas corpus on March 20, 2014. (Doc. 1). Believing AEDPA's[1] statute of limitations had run on March 3, 2014, the Respondent moved to dismiss. (Doc. 9). Cromartie then claimed that he was entitled to equitable tolling, but the Court questioned whether the statute of limitations in fact had run. (Doc. 15). The answer to that question turns on whether Cromartie's state habeas action stopped pending on the day the Georgia Supreme Court denied his application for a certificate of probable cause to appeal ("CPC application"), as the Respondent claims, or the date the Georgia Supreme Court issued its remittitur, or the date the remittitur was received by the trial court. AEDPA's statute of limitations has run only if Cromartie's state habeas action stopped pending on the day the Georgia Supreme Court denied his CPC application. Georgia law, which governs this issue, is clear – an appeal is pending until "the appellate court has issued the remittitur and it has been received and filed in the clerk's office of the court below." *Day v. Chatman*, 130 F. App'x 349, 350 (11th Cir. 2005) (quoting *Chambers v. State*, 262 Ga. 200, 201, 415 S.E.2d 643,

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996.

644-645 (1992)). Consequently, as the Eleventh Circuit held in *Day*, a state habeas petition is pending until the trial court receives the remittitur. *Id.* at 351. Accordingly, the Respondent's motion to dismiss is **DENIED.**

### I.  PROCEDURAL HISTORY

On September 26, 1997, Cromartie was convicted of malice murder, armed robbery, aggravated battery, aggravated assault, and four counts of possession of a firearm during the commission of a crime. *Cromartie v. State*, 270 Ga 780, 781 n.1, 514 S.E.2d 205, 209 n.1 (1999). On October 1, 1997, Cromartie was sentenced to death for the murder. *Id.* The Georgia Supreme Court affirmed his conviction and sentence on March 8, 1999. *Id.* at 781, 514 S.E.2d at 209. The United States Supreme Court denied certiorari on November 1, 1999. *Cromartie v. Georgia*, 528 U.S. 974 (1999). AEDPA's one-year statute of limitations started to run. 28 U.S.C. § 2244(d)(1)(A).

Cromartie filed his state habeas corpus petition on May 9, 2000. (Doc. 19-14). This tolled the statute of limitations. 28 U.S.C. § 2244(d)(2). The trial court denied relief in an order entered February 9, 2012. (Doc. 23-37). Cromartie was granted an extension of time to file his CPC application on March 2, 2012. (Docs. 23-38; 23-39). Around this time, according to Cromartie, a prosecution witness came forward and "indicated" he testified falsely at Cromartie's trial. (Doc. 1 at 8). On March 8, 2012, Cromartie filed an emergency motion in the Georgia Supreme Court requesting an extension of time to file his notice of appeal. (Doc. 23-40). On March 9, 2012, the Georgia Supreme Court granted a 30-day extension. (Doc. 23-41).

Cromartie then moved for reconsideration in the trial court. (Doc. 1 at 9). Because his motion for reconsideration did not toll the time for filing a notice of appeal, Cromartie filed a notice of appeal on April 9, 2012. (Docs. 1 at 8; 24-2). Although

Cromartie's notice of appeal had divested its jurisdiction, the trial court denied Cromartie's motion for reconsideration.  (Doc. 24-3).  The Georgia Supreme Court, on October 1, 2012, remanded the case to the trial court "to allow it to regain jurisdiction and … enter an appropriate new order."  (Doc. 24-8).  In an order entered October 9, 2012, the trial court again denied Cromartie's motion for reconsideration.  (Doc. 24-9).

Cromartie filed a notice of appeal on October 24, 2012, and his CPC application on November 8, 2012.  (Docs. 24-10; 24-11).  The supreme court denied the CPC application on September 9, 2013.  (Doc. 24-14).  The supreme court issued its remittitur on December 10, 2013, and the remittitur was filed in the trial court on February 4, 2014.[2]  (Doc. 33-1).  The United States Supreme Court denied Cromartie's petition for writ of certiorari on April 21, 2014.  *Cromartie v. Chatman*, 134 S. Ct. 1879 (2014).

Cromartie filed his federal habeas petition in this Court on March 20, 2014.  (Doc. 1).  At Cromartie's request, the Court appointed Brian Kammer, Executive Director of the Georgia Resource Center, to represent him.  (Doc. 6).  On March, 28, 2014, Cromartie requested the additional appointment of attorney Martin McClain.  (Doc. 8).  Both Kammer and McClain had represented Cromartie in his state habeas proceedings.  (Doc. 8 at 1-2).

On April 1, 2014, the Respondent moved to dismiss Cromartie's federal habeas petition as untimely.  (Doc. 9).  The motion alleges that the Georgia Supreme Court denied Cromartie's CPC application on September 9, 2013, and then concludes that his federal habeas petition was filed "382 days after his conviction and death sentence became final."  (Doc. 9 at 4).  Although the motion does not state it expressly, clearly the

---

[2]  The Georgia Supreme Court did not issue its remittitur until December 10, 2013, because O.C.G.A. § 5-6-11 requires the court, in death penalty cases, to hold its remittitur for 90 days.  The record does not explain why the remittitur was not filed in the trial court until February 4, 2014.

Respondent contends that § 2244(d)(2) tolling for Cromartie's state habeas action ended the day the Georgia Supreme Court denied Cromartie's CPC application.

On April 2, 2014, Kammer moved to withdraw, claiming that he could not represent Cromartie because his conduct could be at issue in determining whether Cromartie was entitled to equitable tolling. (Doc. 11 at 2). The Court granted Kammer's motion to withdraw and appointed McClain on April 14, 2014. (Doc. 13).

On June 16, 2014, Cromartie filed a response to the motion to dismiss. (Doc. 15). Cromartie did not dispute Respondent's assertion that statutory tolling ended on September 9, 2013—the date the Georgia Supreme Court denied his CPC application. Rather, he argued that 28 U.S.C. § 2244(d)(1)(D) was the triggering date for AEDPA's statute of limitations for several of his claims and that equitable tolling applied to any untimely filed claims. (Doc. 15 at 7-9).

On September 16, 2014, McClain moved to withdraw as counsel and to substitute new counsel from the Federal Community Defender Office for the Eastern District of Pennsylvania. (Docs. 27; 28; 31). On October 9, 2014, the Court granted Cromartie's motion to substitute counsel. (Doc. 36).

Because the record filed by the Respondent did not include a copy of the Georgia Supreme Court's remittitur in Cromartie's state habeas action, the Court obtained a copy from the trial court. (Doc. 33-1). The Court learned that the supreme court issued the remittitur on December 10, 2013, and it was filed in the trial court on February 4, 2014. (Doc. 33-1). It was then apparent that Cromartie's federal petition was untimely *only* if statutory tolling ended on September 9, 2013, the day the Georgia Supreme Court denied his CPC application. If the state habeas action was still "pending" until either December 10, 2013, or February 4, 2014, his federal habeas petition was timely.

Based on this new information, *Day*, and Georgia cases holding that a Georgia judgment is final only when the appellate court's remittitur is filed with the trial court, the Court asked counsel for the Respondent whether the Respondent stood by his motion to dismiss. (Doc. 33 at 2). On September 24, 2014, Respondent confirmed that he did. (Doc. 34). He argued there "appears to be no clear rule from the Georgia Supreme Court holding that its denial of a state habeas appeal is only final after the issuance of remittitur, the transmittal of the remittitur to the trial court or its filing in the trial court." (Doc. 34 at 7-8). The Respondent suggested that, "given the lack of precedent on this issue," the Court should certify a question to the Georgia Supreme Court for guidance. (Doc. 34 at 15).

## II. ANALYSIS

AEDPA sets a one-year statute of limitations for seeking federal habeas relief from a state court judgment. 28 U.S.C. § 2244(d)(1). Section 2244(d)(2) provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Thus, this limitations period is tolled while a prisoner seeks post-conviction relief in state court. A state habeas "application is pending as long as the ordinary state collateral review process is 'in continuance'—i.e., 'until the completion of' that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (quoting *Webster's Third New International Dictionary* 1669 (1993)). The Supreme Court has also explained that "[s]tate review ends when the state courts have finally resolved an application for state post-conviction relief. After the State's highest court

has issued its mandate or denied review, no other state avenues for relief remain open." *Lawrence v. Florida*, 549 U.S. 327, 332 (2007).

### A. Federal courts look to state law to determine if an action is pending under 28 U.S.C. § 2244(d)(2).

Whether a state action for post-conviction relief is "pending" for purposes of § 2244(d)(2) is a matter of federal law. *Payne v. Kemna*, 441 F.3d 570, 571 (8th Cir. 2006). But federal law requires examination of state law to determine when that state action is pending or, more to the point, precisely when it stops pending. *See Day v. McDonough*, 547 U.S. 198, 203 (2006) (citing *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000)).

In *Nyland v. Moore,* for example, a Florida appellate court affirmed the trial court's dismissal of the petitioner's motion for post-conviction relief on March 21, 1997. However, the court's mandate did not issue until May 13, 1997. The appellate court affirmed the denial of a second motion for post-conviction relief on April 3, 1998. The court issued its mandate on that order on May 4, 1998. If § 2244(d)(2) tolling ended on the dates the appellate courts denied relief, AEDPA's clock had run for 391 days before Nyland filed his federal habeas petition. If statutory tolling ended upon the issuance of the mandates, only 288 days had run. The district court concluded that tolling ended upon the entry of the appellate court orders and dismissed Nyland's petition. The Eleventh Circuit reversed. Under Florida law, the Eleventh Circuit held, the appellate proceedings were pending until the mandates issued. 216 F.3d at 1267 (citing *Hodges v. State*, 708 So. 2d 620, 621 (Fla. Dist. Ct. App. 1998)). Consequently, the court concluded that Nyland's federal petition was timely filed.

Since *Nyland*, the Eleventh Circuit has always looked to state law to determine when a post-conviction petition is pending for purposes of § 2244(d)(2). *Lugo v. Sec'y,*

*Fla. Dep't of Corr.*, 750 F.3d 1198, 1204 (11th Cir. 2014); *Cadet v. Fla. Dep't of Corr.*, 742 F.3d 473, 475 (11th Cir. 2014); *Gorby v McNeil*, 530 F.3d 1363, 1365 n.1 (11th Cir. 2008); *Downs v. McNeil*, 520 F.3d 1311, 1317 (11th Cir. 2008); *Wainwright v. Sec'y, Dep't of Corr.*, 537 F.3d 1282, 1284 (11th Cir. 2007); *Sweet v. Sec'y, Dep't of Corr*, 467 F.3d 1311, 1314-15 (11th Cir. 2006); *Moore v. Crosby*, 321 F.3d 1377, 1380 (11th Cir. 2003).

As noted, and most pertinent to this action, the Eleventh Circuit held in *Day v. Chatman* that "[i]n Georgia, an appeal is no longer pending 'where the appellate court has issued the remittitur and it has been received and filed in [the] clerk's office of the court below.'" 130 F. App'x at 350 (quoting *Chambers v. State*, 262 Ga. 200, 201, 415 S.E.2d 643, 644-45 (1992)). Consequently, the court held, AEDPA's statute of limitations was statutorily tolled under 28 U.S.C. § 2244(d)(2) "until the trial court received the Georgia Supreme Court's remittitur." *Id.* at 351.

Although not binding precedent,[3] *Day's* approach and conclusion are hardly surprising. Across the country, federal courts routinely look to state law to determine when a state action for post-conviction relief is pending for purposes of AEDPA's statutory tolling. It is instructive to examine what those courts have found to be determinative.

The Ninth Circuit, which seems to have addressed this issue more than any other circuit, has been all over the map in its holdings. But for good reason – different states have different procedures. In Arizona, a state habeas action is final when the supreme court denies the petition because Arizona procedure provides that "'[w]hen the matter is determined, the clerk of the appellate court shall return the record to the appropriate trial court for retention according to law.'" *Hammerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007) (quoting Ariz. R. Crim. P. 32.9(h)). This, the Ninth Circuit held, "is not

---

[3] "Unpublished opinions are not considered binding precedent," but are "persuasive authority." 11th Cir. R. 36-2.

equivalent to the issuance of the mandate. Indeed there is no requirement that the appeals court wait a certain amount of time before sending the record back." *Id.* Under these circumstances, returning the record to the trial court is merely a "ministerial function." *Id.* The Ninth Circuit came to similar conclusions when applying Washington and Guam law. *Wetton v. Clarke*, 258 F. App'x 134, 136 (9th Cir. 2007); *White v. Klitzkie,* 281 F.3d 920, 923 n.4 (9th Cir. 2002).

California law, however, led to a different result. At the time of the Ninth Circuit's decision in *Bunney v. Mitchell,* California procedure provided that a "'decision of the supreme court becomes final thirty days after filing.'" 262 F.3d 973, 974 (9th Cir. 2001) (quoting Cal. R. of Court 24). Thus, the court concluded that a habeas petition remained pending for purposes of § 2244(d)(2) until thirty days after the supreme court's decision denying habeas relief.[4]

Missouri law also led the Eighth Circuit to a different conclusion. Missouri courts had long held that an appeal is not final until the mandate issues. Accordingly, in *Payne*, the Eighth Circuit held that the AEDPA statute of limitations was tolled until the state appellate court issued its mandate after it denied habeas relief.[5] 441 F.3d at 572. The Eighth Circuit reached a similar result when examining North Dakota law. Because North Dakota law made clear that an action "'is not finally determined, or completed' until the mandate issues," a state action for post-conviction relief remains pending for the

---

[4] Effective January 1, 2003, "the California Rule was amended … to make clear that a denial of a writ is final immediately upon filing." *Korolev v. Horel*, 386 F. App'x 594, 595 (9th Cir. 2010) (citing Cal. R. of Court 8.532).

[5] To reach this conclusion, the Eighth Circuit relied on three cases from the Missouri Court of Appeals, none of which was a state habeas appeal: *Williams v. Blumer*, 763 S.W.2d 242, 245 (Mo. Ct. App. 1988) (holding that if a cause of action is created by a successful appeal, the statute of limitations clock for that action starts to run when the mandate is filed, not when the appellate decision is issued); *Meierer v. Meierer*, 876 S.W.2d 36, 37 (Mo. Ct. App. 1994) (holding the appellate court decision is final at the time the mandate issues); and *Philmon v. Baum*, 865 S.W.2d 771,774-75 (Mo. Ct. App. 1993) (holding an appellate decision has no precedential weight until the mandate issues because the decision is not final until then).

purpose of AEDPA tolling until the North Dakota Supreme Court issues its mandate. *Steen v. Schuetzle*, 326 F. App'x 972, 974 (8th Cir. 2009) (quoting *Finch v. Backes*, 491 N.W.2d 705, 707 (N.D. 1992)).

Although Illinois has a mandate rule of sorts, the Seventh Circuit has held that the judgment of an Illinois court of review is final on the date it is entered. *Wilson v. Battles*, 302 F.3d 745, 747 (7th Cir. 2002). But this was because Illinois law clearly established that an appellate court's judgment "becomes effective on the date [the] court enters it and not on the date that the mandate issues." *People v. Dukes*, 497 N.E.2d 351, 356 (Ill. App. Ct. 1986).

The Fourth Circuit addressed the issue in *Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003) (en banc). Rouse argued that his post-conviction action was still pending twenty days after the North Carolina Supreme Court denied his petition for certiorari "because North Carolina Rule of Appellate Procedure 32(b) requires that unless 'a court orders otherwise, its clerk shall enter judgment and issue the mandate of the court 20 days after the written opinion of the court has been filed with the clerk.'" *Id.* at 244 (quoting N.C. R. App. P. 32(b)). But the Fourth Circuit held that Rule 32 was inapplicable because, in North Carolina, no mandate issues from a denial of certiorari "as there is no action for the lower court to take once the petition for writ of certiorari is denied." *Id.* Rather, the "denial of certiorari is a refusal to determine the rights and obligations of the parties," and the supreme court does not enter a judgment upon the denial of certiorari. *Id.* Because there is no judgment, there is no need for the North Carolina Supreme Court to issue a mandate after it denies certiorari. Having found no state court procedural rule that

extended the pendency of Rouse's state post-conviction review,[6] the court found that his action was no longer pending after the North Carolina Supreme Court denied certiorari. *Id.*

*Rouse* is particularly instructive given the difference between North Carolina law governing petitions for certiorari and Georgia law governing appeals from a trial court's denial of habeas relief.  First, upon the timely filing of a notice of appeal and CPC application, the jurisdiction of the Georgia Supreme Court is invoked.  *See Crosson v. Conway*, 291 Ga. 220, 221-22, 728 S.E.2d 617, 619-20 (2012).[7]  Because jurisdiction moves to the Georgia Supreme Court, it is not surprising that Georgia law requires the supreme court to issue a remittitur after it disposes of the appeal so that the jurisdiction of the case will move back to the trial court.[8]  The remittitur in Cromartie's case illustrates this point.  It states that his "case came before this Court upon appeal … and it is considered and adjudged that the remittitur be transmitted" to the trial court along with the supreme court's decision.  (Doc. 33-1).  Second, the Eleventh Circuit has recently made clear that when the Georgia Supreme Court denies a CPC application, it is "not exercising discretionary review akin a denial of a petition for certiorari review."  *Hittson v. GDCP Warden*, 759 F.3d 1210, 1231 (11th Cir. 2014).  Rather, the denial of a CPC application

---

[6] The Fourth Circuit also found that N.C. R. App. P. 31, which allows 15 days to file for a rehearing, does not apply following the denial of certiorari.  *Rouse*, 339 F.3d at 245.  Thus, Rouse's petition was not pending for 15 days after the denial of certiorari.

[7] This in contrast to interlocutory and discretionary appeals under Georgia law.  There, a notice of appeal is filed only after the appellate court grants permission to appeal.  O.C.G.A. §§ 5-6-34(b), 5-6-35(g).

[8] In *Rouse*, the clerk of the Supreme Court of North Carolina submitted an affidavit explaining that the general practice of that court was not to issue mandates after the summary denial of certiorari and Rouse "submitted no evidence that any mandate ever issued in his case."  339 F.3d at 244.  In this case, no one contends that the Georgia Supreme Court does not issue remittiturs after it denies CPC applications, just as the court issued a remittitur in Cromartie's case on December 10, 2013.  (Doc. 33-1).

is "an adjudication on the merits for AEDPA purposes."[9]  *Id.* at 1232.  Thus, a CPC application is not at all comparable to the certiorari petition addressed by the Fourth Circuit.  Unlike the procedure in North Carolina, the denial of a CPC application is not a refusal to hear the merits of a case and clearly Georgia law requires the court to issue a remittitur when it denies a CPC application.

The clear thread running through these cases, and the many district court cases addressing the issue, is that when state law provides that some further action is necessary to make an appellate order final, such as the issuance of a mandate, the state petition for post-conviction relief remains pending until that last act has been accomplished.  If, on the other hand, no further action is necessary to render a judgment final or if any further action is only ministerial, then the post-conviction proceeding stops pending when the appellate court issues its order disposing of the case.

### B. Under Georgia law it is clear that an action is pending until the appellate court's remittitur is filed in the trial court.

As discussed, the Eleventh Circuit, in an unpublished opinion, has answered the precise question before the Court: Under Georgia law and for purposes of AEDPA's statutory tolling, a state habeas action is pending until the remittitur of the Georgia Supreme Court has been returned to the trial court.  It is instructive to examine the history of this principle of Georgia law, particularly in view of the Respondent's request that the Court certify the issue to the Georgia Supreme Court.

In *Cohen & Menko v. Southern Express Co.*, the Georgia Supreme Court defined the phrase "final judgment" and explained when a case was no longer considered to be

---

[9] In *Hittson*, the Eleventh Circuit was presented with multiple claims that had been addressed by multiple state courts.  Thus, the court had to determine which state court decision it had to review under § 2254(d).  The Eleventh Circuit explained that the last state court to reach the merits of Hittson's claims was not the superior court's lengthy order denying Hittson's state habeas petition.  Instead, "the last state court to pass on the merits of the relevant claims was the Georgia Supreme Court when it summarily denied" Hittson's CPC application.  *Hittson*, 759 F.3d at 1231.

-11-

pending:

> What is a final judgment? Final judgments are such as at once put an end to the action, by declaring that the plaintiff has either entitled himself, or has not, to recover the remedy he sues for …. When the judgment of non-suit was awarded by the court, the plaintiffs excepted to that judgment within the time prescribed by law, and brought the case before this court for a further hearing, as they had the legal right to do. Until the judgment of this court was rendered upon the writ of error, affirming the judgment of the court below, and made the final judgment of that court, the case was pending, and if the judgment of non-suit had been reversed, the case would have continued pending in the court. The judgment of non-suit, was not *final* in the sense of the law, until the judgment of this court, affirming the judgment of the court below, was made the judgment of that court.

53 Ga. 128,133-34 (1874) (emphasis in original).

In *Knox v. State*, the Georgia Supreme Court determined when its jurisdiction over a case ended and the jurisdiction of the trial court resumed. 113 Ga. 929, 39 S.E. 330 (1901). After Knox successfully appealed his murder conviction, the supreme court transmitted the remittitur to the trial court and the clerk "entered the remittitur upon the minutes of that court." *Id.* at 929, 39 S.E. at 330. Knox was tried again, found guilty, and sentenced. *Id.* He then "filed a motion in arrest of judgment on the ground that the judgment of the supreme court had never, by any order of the superior court, been made its judgment…." *Id.* In short, Knox argued that the trial court never regained jurisdiction because the remittitur was only received by the clerk and not made the judgment of the trial court.

The Georgia Supreme Court disagreed:

All jurisdiction of this court over the case was at an end after the remittitur therefrom had been filed in the office of the clerk of court below…. It is certainly safe to say that a case is "sent back" when the remittitur from the supreme court reaches the hands of the clerk of the trial court. The case starts on its journey back to the court from whence it came to the supreme court when the remittitur is transmitted by the clerk of this court, and the journey is completed when that remittitur is lodged with the official custodian of the trial court, who is authorized to receive the document. That custodian is the Clerk of Court, and none other…. [T]he trial court should

> resume jurisdiction over the case whenever the mandate of this court reaches it through its duly-appointed clerk.
>
> …
>
> [T]he filing of a remittitur with the clerk of a trial court is, without more, sufficient to reinvest that court with jurisdiction over a case.

*Id.* at 932-33, 39 S.E. at 331-32 (citations omitted).

In *Horton v. Wilkes*, the Georgia Supreme Court faced somewhat of a mirror image of the present case, with the respondent in a habeas case taking the position that an appeal was not final until the remittitur had been returned to the trial court. 250 Ga. 902, 302 S.E.2d 94 (1983). In "September, 1982," the Georgia Supreme Court affirmed Horton's conviction and death sentence. *Id.* at 902, 302 S.E.2d at 95. In November 1982 (again the court does not mention the precise date), Horton petitioned the United States Supreme Court for a writ of certiorari. Horton, however, wanted to avoid changes in Georgia's habeas corpus law that were to become effective January 1, 1983. Accordingly, he filed a state habeas action on December 30, 1982. Although the Georgia Supreme Court's opinion does not directly state it, clearly the court had not yet returned its remittitur to the trial court. Taking the opposite position the Respondent takes here, the respondent in *Horton* argued that Horton's habeas action was premature because his direct appeal was not yet final. The respondent persuasively argued that allowing Horton to pursue habeas relief before his conviction became final "would mean that two courts … would be considering the same case … at the same time, with the possibility that the two courts might reach inconsistent results or that the action of one might moot the action of the other…." *Id.* The Georgia Supreme Court agreed. Horton's direct appeal, the court held, was not final "until the judgment of this Court is made the judgment of the trial court." *Id.* at 902, 302 S.E.2d at 96. In short, Horton's direct appeal was still pending in the Georgia Supreme Court and would remain pending

until the remittitur had been returned to the trial court.

Citing *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012), Respondent correctly points out that "the filing of the remittitur in the trial court, as stated in the *Horton* case, no longer controls the date of finality of conviction for purposes of calculating the one year time limit under § 2244(d)(1)(A)." Under *Gonzalez*, Horton's conviction, for purposes of § 2244(d)(1)(A), would have become final when the United States Supreme Court denied his petition for certiorari or affirmed his conviction on direct appeal. *Gonzalez,* 132 S. Ct. at 653. How the Georgia Supreme Court defines "final judgment" has no bearing on the issue of finality under § 2244(d)(1)(A). But as discussed, § 2244(d)(2) "by its terms refers to 'State' procedures," and a State's procedures must be reviewed for purposes of determining when State post-conviction review ends. *Id.* at 654 n.10 (citing *Lawrence*, 549 U.S. at 333).

In *Chambers v. State*, the principal case cited by the Eleventh Circuit in *Day*, the State appealed the grant of a motion to suppress. 262 Ga. 200, 200, 415 S.E.2d 643, 644 (1992). The Georgia Court of Appeals reversed and then denied Chambers's motion to reconsider. *Id.* at 201, 415 S.E.2d at 644. Chambers filed a notice of intention to apply to the Georgia Supreme Court for a writ of certiorari. Although the court of appeals had not issued the remittitur, the trial court nevertheless convened Chambers's trial and he was found guilty on March 7, 1990. On March 20, 1990, the court of appeals issued the remittitur and it was filed in the trial court on March 22, 1990. *Id.* Voiding Chambers's conviction, the Georgia Supreme Court held that "an appellate court's jurisdiction over a case '[is] at an end after the remittitur therefrom [has] been filed in the office of the [court below].'" *Id.* (citing *Knox*, 113 Ga. at 930, 932, 39 S.E. 330). Until then, the case is still pending in the appellate court and the lower court lacks

jurisdiction to act.  *Id.* at 201, 415 S.E.2d at 644-45.

The Georgia Supreme Court recently applied and reaffirmed *Chambers* in *Massey v. Massey*: "[A]n appellate court maintains jurisdiction over a case until it has 'issued the remittitur and [the remittitur] has been received and filed in the clerk's office of the court below.'"  294 Ga. 163, 166, 751 S.E.2d 330, 333-34 (2013) (quoting *Chambers*, 200 Ga. at 201, 415 S.E.2d at 644-45).

Many more cases could be discussed, but that would belabor a point that is beyond dispute.  In Georgia, a case is pending in the appellate court until the remittitur is issued and filed in the lower court.  Stated another way, a judgment is not final until the appellate court issues the remittitur and it is filed with the trial court.  Thus, a state habeas petitioner's appeal to the supreme court is pending in that court until the remittitur is filed in the superior court.

The Respondent argues this solid principle of Georgia law should not apply to habeas cases.  But, Georgia law governing remittitur does not exempt habeas cases.  Georgia Supreme Court Rule 60 provides that in all cases, except those involving death sentences, the remittitur shall be transmitted "as soon as practical after the expiration of 10 days after the entry of the judgment or upon the denial of a motion for reconsideration…."  Ga. Sup. Ct. R. 60(2).  The reference to cases involving death sentences refers, of course, to O.C.G.A. § 5-6-11, and that statute is particularly relevant.  It provides that in any case involving the death penalty, specifically including a habeas corpus action, "the remittitur shall not issue from [the Supreme Court of Georgia] for at least 90 days from the date of the court's decision…."  O.C.G.A. § 5-6-11.  Thus, the Georgia General Assembly has made clear its intent that the remittitur be held by the Georgia Supreme Court in habeas cases involving the death penalty, probably to allow a

-15-

petitioner to pursue relief in the United States Supreme Court.[10]

In sum, it is clear that under Georgia law, a habeas corpus action remains pending and is not final until the appellate court's remittitur has been returned to the trial court.

### C. Certification is unnecessary because the legal issue is not close and there exists sufficient sources of state law.

In determining whether to certify a question to the state court, a federal court should consider the following factors: (1) "[t]he closeness of the question and the existence of sufficient sources of state law"; (2) considerations of comity in light of the particular issue and case; and (3) the practical limitations of the certification process, including significant delay. *Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274-75 (5th Cir. 1976).[11]   The most important of these factors is the first.   *Id*.   Therefore, if there are sufficient sources of state law "to allow a principled rather than conjectural conclusion," the court should not invoke the certification process.   *Id.* at 275.

The Respondent's strongest argument for certification is similar to the argument accepted by the Fourth Circuit in *Rouse*.   As discussed above, the Fourth Circuit concluded that North Carolina's mandate rule did not apply to the denial of certiorari in a

---

[10] O.C.G.A. § 5-6-11 illustrates an arguable conflict between *Day v. Chatman* and *Lawrence v. Florida* that the parties do not address.   In *Lawrence*, the Supreme Court, acknowledging that § 2244(d)(2) tolling was determined by state law, held that "no other state avenues for relief remain open" after a state's highest court has issued its mandate, as in the case of Florida, or denied review.   *Lawrence*, 549 U.S. at 332.   A subsequent petition for certiorari to the United States Supreme Court is "separate" and thus the state habeas action is not pending while a petitioner seeks Supreme Court review.   The potential conflict is that while a certiorari petition does not extend § 2244(d)(2) tolling, the Georgia legislature appears to have provided a petitioner with the benefit of additional tolling to file a petition.   However, *Day v. Chatman* does not directly run afoul of *Lawrence* because Georgia law does not provide that the remittitur must be held while a certiorari petition is pending; it only requires it to be held for 90 days.   Moreover, even if the Georgia statute is counter to the spirit of *Lawrence*, the fact remains that Georgia law makes clear that a habeas action is pending until the remittitur is returned to the trial court, and § 2244(d)(2) requires federal courts to apply that state law.   As the California legislature did after the Ninth Circuit's decision in *Bunney*, discussed above, the Georgia legislature could change Georgia law to require an earlier return of the remittitur or to specifically provide that a habeas action is final on the date the Georgia Supreme Court denies a CPC application.

[11] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.   *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

state habeas corpus proceeding, and thus the case stopped pending when the court denied certiorari.  However, the Eleventh Circuit held in *Hittson* that when the Georgia Supreme Court denies a CPC application, it is "not exercising discretionary review akin a denial of a petition for certiorari review."  759 F.3d at 1231.  But the Georgia Attorney General contends *Hittson* was wrongly decided because, under Georgia law, the denial of a CPC application is not a ruling on the merits.  The Attorney General cites O.C.G.A. § 9-14-52, which provides that habeas corpus appeals "shall be governed by Chapter 6 of Title 5 [which governs appeals in civil cases] except that as to final orders of the court which are adverse to the petitioner *no appeal shall be allowed* unless the Supreme Court of this state issues a certificate of probable cause for the appeal."  (emphasis added).  Further, in *Fullwood v. Sivley*, the Georgia Supreme Court held that "the unambiguous legislative intent of [O.C.G.A. § 9-14-52(b)] … is 'to *require* a judicial certification of a probable cause to appeal as a *prerequisite* to appeal in a habeas case…."  271 Ga. 248, 258, 517 S.E.2d 511, 515 (1999) (quoting *Reed v. Hopper*, 235 Ga. 298, 299, 219 S.E.2d 409, 411)(1975)) (emphasis in original).  See also *Brown v. Crawford*, 289 Ga. 722, 715 S.E.2d 132 (2011); *Smith v. Nichols*, 270 Ga. 550, 512 S.E.2d 279 (1999).  Thus, the argument goes, the denial of a CPC application is not a decision on the merits but, on the contrary, is a refusal to address the merits.  Citing *Reed* and *Smith*, the respondent in *Hittson* notified the Eleventh Circuit that, in three state habeas cases pending in the Georgia Supreme Court, the Attorney General had asked the court to confirm the denial of a CPC application is not a ruling on the merits.[12]  The Attorney General contends that the Eleventh Circuit's holding "completely eradicate[s] bedrock principles of state law and

---

[12] *O'Kelley v. Chatman*, No. S14E0708; *Foster v. Chatman*, S14E0771; *Perkinson v. Hall*, S14E0754. According to the Georgia Supreme Court's electronic docket, the court has denied the CPC applications in *Foster* and *Perkinson* and has yet to rule in *O'Kelley*.

will have decisive impact on collateral criminal actions, death penalty and nondeath penalty alike."

Applying the argument against *Hittson*, the Respondent would argue that the denial of a CPC application is a refusal to hear the merits of an appeal akin to the denial of a petition for certiorari in *Rouse*. This argument is perhaps buttressed by O.C.G.A. § 9-14-52(b), which provides that if the supreme court denies the CPC application, the clerk "shall return the original record and transcript and shall notify the clerk of the concerned superior court and the parties to the proceedings below of the determination that probable cause does not exist for appeal." This suggests, perhaps, a more ministerial end to a CPC application than the formal remittitur process.

There are two responses to the argument that this alleged ambiguity in Georgia law warrants certification. First, as discussed, the filing of a notice of appeal and CPC application in a Georgia habeas case undeniably invokes the jurisdiction of the Georgia Supreme Court and there is no ambiguity in Georgia law requiring the supreme court to issue a remittitur. Second, the Eleventh Circuit's holding in *Day* and *Hittson* are not ambiguous and, it should go without saying, are binding on this Court.[13] This Court is not inclined to ask the Georgia Supreme Court to address issues the Eleventh Circuit has passed on.

### III. RESPONDENT'S MOTION TO DISMISS IS DENIED.

The parties agree that Cromartie's federal habeas petition is untimely only if § 2244(d)(2) tolling ended on the day the Georgia Supreme Court denied Cromartie's CPC application. It did not.

Therefore, Respondent's motion to dismiss Cromartie's federal habeas petition as

---

[13] Again, *Day* is unpublished. That does not mean this Court can ignore it.

-18-

untimely (Doc. 9) is **DENIED**.

**SO ORDERED**, this 29th day of December, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
