## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| RAY JEFFERSON CROMARTIE, | * | CIVIL ACTION NO. |
| | * | 5:11-CV-75-MTT |
| Petitioner, | * | |
| | * | |
| v. | * | HABEAS CORPUS |
| | * | |
| CARL HUMPHREY, Warden, | * | |
| Georgia Diagnostic and | * | |
| Classification Center, | * | |
| | * | |
| Respondent. | * | |

## RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO REOPEN HABEAS CORPUS APPLICATION PURSUANT TO FEDERAL RULE 60(b)(6) AND STAY THE PROCEEDINGS

Christopher M. Carr
  *Attorney General of Georgia*
Beth A. Burton
  *Deputy Attorney General*
Sabrina D. Graham
  *Sabrina D. Graham*


Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-7659
sgraham@law.ga.gov

*Counsel for Respondent*

# TABLE OF CONTENTS

**Page**

Introduction .................................................................. 1

Statement of the Case ................................................... 2

    A. Facts of the Crimes ............................................. 2

        1. Madison Street Deli ........................................ 2

        2. Junior Food Store Crimes ............................... 3

    B. Trial and Direct Appeal ...................................... 7

    C. State Habeas Proceeding .................................... 9

    D. Federal Habeas Proceeding ............................... 11

    E. Extraordinary Motion for New Trial Proceeding ............... 14

    F. Successive State Habeas Proceeding ................... 14

    G. 42 U.S.C. § 1983  Proceeding .............................. 15

    H. Rule 60(b) Motion .............................................. 16

Argument ..................................................................... 16

    I. Cromartie has failed to show that his § 2254 application should be reopened under Rule 60(b)(6) or that his proceedings should be stayed. ........................................... 16

        A. Standard of Review ...................................... 17

        B. Cromartie has not shown diligence ............................... 18

        C. Cromartie has not provided evidence proving he is actually innocent of the crimes at the Junior Food Store. ................................................. 20

Conclusion.........................................................................23

## INTRODUCTION

Petitioner Ray Jefferson Cromartie requests that this Court reopen his 28 U.S.C. § 2254 proceeding under Federal Rule of Civil Procedure 60(b)(6) and stay the proceedings due to "extraordinary circumstances."  Cromartie's first "extraordinary circumstance" is the obtainment of an affidavit from co-defendant Thaddaeus Lucas stating he "overheard" co-defendant Corey Clark state he shot the clerk at the Junior Food Store.  Doc. 95-1 at 1-4.  But Lucas admits in his affidavit that he does not know what occurred in the Junior Food Store and Cromartie does not prove this information could not have been obtained sooner with diligence.  As this evidence lacks reliability and there still remains overwhelming evidence of Cromartie's guilt, Cromartie has not shown he is "actually innocent" of the Junior Food Store crimes and therefore not presented the Court with an "extraordinary circumstance" to reopen his § 2254 application.

Cromartie's other claims of "extraordinary circumstances" reduce to a request for this Court to reconsider its previous determination that his ineffective assistance of trial counsel claim regarding the presentation of mitigating evidence is time-barred and a request for more proof of guilt from the victim's daughter.

1

As neither of these claims are "extraordinary" the Court should deny Cromartie's motion and request for stay of proceedings.

## STATEMENT OF THE CASE

### A.  Facts of the Crimes

#### 1.   Madison Street Deli

On April 7, 1994, Dan Wilson, the clerk of the Madison Street Deli was shot in the face as he was washing dishes in the back kitchen.  Doc. 18-12 at 36, 111.  He was shot with a .25 caliber handgun which testimony at trial showed Cromartie had borrowed from his cousin Gary Young.  *Id.* at 63, 107-08.  Wilson survived the attack.  *Id.* at 61-64.

A surveillance video camera recorded the events proceeding the shooting of Wilson and captured an individual resembling Cromartie attempting unsuccessfully to open the cash register.  *Id.* at 67-70, 84-87; Doc. 18-14 at 4.

Witnesses testified that Cromartie obtained Young's handgun prior to the Madison Street Deli shooting and Cromartie made statements implicating himself in the Madison Street Deli shooting to witnesses that testified at trial.  Doc. 18-12 at 111; Doc. 18-13 at 46.  Specifically, Carnell Cooksey testified that on the night of the Madison Street Deli shooting he saw Young give

2

Cromartie his handgun, which Cooksey identified as the handgun shown at trial to be the weapon used in both convenience store shootings.  Doc. 18-12 at 107-09, 115, 120-21.  Cooksey also testified that Cromartie asked him if he was "down with the 187"—which was "slang for robbery"—and Cooksey told Cromartie he was not interested.  *Id.* at 111.

In corroboration, Young testified that he gave the handgun to Cromartie identified as the weapon used in the Madison Street Deli shooting.  Doc. 18-13 at 28.  Young also testified that Cromartie confessed to him that he shot the clerk at the Madison Street Deli.[1]  *Id.* at 46-52.

### 2.   Junior Food Store Crimes

Approximately two days later, nearly identical crimes were committed at the Junior Food Store—only this time the store clerk died as a result of being shot in the head.  During the early morning hours of April 10, 1994, Thaddeus Lucas (Cromartie's step-brother) drove Cromartie and Corey Clark to the Junior Food

---

[1] Additionally, Katina Washington testified that Young gave his handgun to someone on the night of the Madison Street Deli shooting and Cromartie was there when that occurred.  Doc. 18-15 at 39-40.  However, because Washington did not see the hand-off she could not positively identify to whom Young gave his handgun.  *Id.* at 41.

3

Store located in Thomasville, Georgia, ostensibly for Cromartie and Clark to steal beer from the store.  Doc. 18-15 at 82, 89.

Lucas testified that Cromartie asked him to drive him to the store, Cromartie picked the store, and Cromartie told Lucas were to park.  Doc. 18-15 at 86-89.  Specifically, corroborated by Clark's testimony, that after dropping Cromartie and Clark off near the side of the Junior Food Store, Cromartie instructed Lucas to wait for him and Clark at "Providence Plaza" apartments which was located nearby.  *Id.* at 89, 139.  Lucas also testified that although he knew Clark, this was the only time Clark ever rode in his car.[2] *Id.* at 83-90, 117.  Additionally, Lucas testified that Cromartie did not tell him what happened in the store but Clark did; however, Lucas did not testify as to what Clark told him.  *Id.* at 93.  And when asked whether he knew Cromartie was going to "kill" the clerk, Lucas testified that he was "surprised" and would not have taken Cromartie to the store.  *Id.* at 125.

Upon entering the store, Clark testified he walked to the beer cooler in the back of the store while Cromartie walked down the first aisle to the front cash register.  *Id.* at 140.  As with the first

---

[2] Contrary to Cromartie's assertion, the record does not show that Clark and Lucas testified that they were "long-time friend[s]." Doc. 95 at 8 n.2.

4

victim, the store clerk Richard Slysz was shot twice in the head as he sat on a stool behind the register. *Id.* at 140-41. Clark testified he was "shocked" and the shots were "unexpected." *Id.* at 140. Ballistics tests confirmed that the same Raven .25 caliber pistol was used in both the Madison Street Deli and Junior Food Store shootings. Doc. 18-16 at 12-21.

Clark testified that he saw Cromartie unsuccessfully attempt to open the cash register. Doc. 18-15 at 141-42. Clark then went behind the counter and tried to open the cash register while Cromartie went to the back of the store and stole two twelve packs of Budweiser beer from the store's cooler. Doc. 18-12 at 117; Doc. 18-15 at 142-43. Both men then fled the scene. Doc. 18-15 at 142. Clark testified that as Cromartie was fleeing the scene, one of the cases of Budweiser tore open, spilling beer cans onto the muddy ground. Doc. 18-15 at 143; see also Doc. 18-12 at 113, 134. Clark gathered all of the cans but two, got into Lucas' car at Providence Plaza with the beer, and all three men returned to the Cherokee Apartments. Doc. 18-15 at 143; *see also id.* at 90-91.

Walter Seitz,[3] who worked at the Jack Rabbit Foods store, which sat across a well-lit street from the Junior Food Store,

---

[3] Seitz called in the original complaint to the police regarding the Junior Food Store shooting. Doc. 18-13 at 22-23.

corroborated Clark's testimony.  Seitz explained that he had a clear view into the Junior Food Store and "never lost sight of the store" after he heard the gunshots.  Doc. 18-15 at 25-27.  He testified that he heard the gunshots, then saw a "light skinned black" person, which was shown at trial to be Cromartie, (*id.* at 147; Doc. 18-17 at 150-51), run from the front of the store "where the clerk was to the back of the store," then run from the store with "two twelve packs of beer" (Doc. 18-15 at 26-27).  Following this individual, Seitz saw another male, "darker in complexion and thinner"4 exit the store in the same direction as the first male.  Id. at 28-29.

William Taylor also corroborated Clark's testimony.  Taylor testified that on the night of the crimes he was driving by the Junior Food Store and saw two black individuals come out of the Junior Food Store, run to the left of the store, "drop something perhaps and go back to pick it up."  Doc. 18-12 at 133.  Taylor stated he thought the item the individual was carrying was beer.  *Id.* at 134.

---

4 Clark testified at trial that he was 6'2" and weighed 189 lbs. and was approximately the same size at the time of the crimes.  Doc. 18-15 at 134.  He also testified that he was taller and darker in skin tone than Cromartie.  *Id.* at 142.

6

On the same side of the store in which Taylor testified he saw the individuals drop what he thought was beer, the police found a footprint, which was identified as a possible match for Cromartie's shoes but not Young's, Clark's or Lucas' (Doc. 18-17 at 52-53), a couple of beers, and a portion of a Budweiser beer carton with Cromartie's thumb print, containing 15 points of comparison (Doc. 18-13 at 140-41, 148; Doc. 18-18 at 58). *See also id.* Doc. 18-13 at 18, 201-03; Doc. 18-15 at 207-10, 217-18; Doc. 18-17 at 150.

Law enforcement brought in the canine unit to track the perpetrators of the Junior Food Store crimes. The dogs tracked to the Providence Plaza apartments' parking lot where the trail ended. Doc. 18-13 at 204; Doc. 18-15 at 89, 139.

Finally, Cooksey testified that Cromartie confessed to him that he committed the murder at the Junior Food Store. Doc. 18-12 at 114.

## B.  Trial and Direct Appeal

Cromartie was indicted by the Thomas County Grand Jury on October 20, 1994, for one count of malice murder, one count of armed robbery, one count of aggravated assault, one count of aggravated battery and four counts of possession of a firearm during the commission of a crime. Doc. 17-1 at 29-34.

7

Cromartie was represented by Michael Mears and Mears' team during trial.  During his career, Mears was involved in approximately 100-120 death penalty cases.  Doc. 21-14 at 39.  Mears served as lead counsel in at least 60 death penalty cases and had tried about 27-29 death penalty cases to a jury.  *Id.* Additionally, Mears was a national educator on defending death penalty cases.  *Id.* at 41-42.

On September 26, 1997, following a jury trial, Cromartie was convicted as charged in the indictment.  Doc. 17-8 at 63.  Following the sentencing phase of trial, the jury found three statutory aggravating circumstances:  1) that the offense of murder was committed during an armed robbery; 2) that the offense of murder was committed for the purpose of receiving money or any other thing of monetary value; and 3) that the offense of murder was outrageously or wantonly vile, horrible, or inhuman, in that it involved depravity of mind, or aggravated battery to the victim prior to the death of the victim.  Doc. 17-8 at 74-75.  The jury recommended a sentence of death on October 1, 1997.  *Id.* at 74.

The trial court sentenced Cromartie to death for malice murder, consecutive sentences of life imprisonment for armed robbery, twenty years for aggravated battery, and five years for

8

each count of possession of a firearm during the commission of a crime.  *Id.* at 77-82.

The Georgia Supreme Court affirmed Cromartie's convictions and death sentence on March 8, 1999.  *Cromartie v. State*, 270 Ga. 780.  Thereafter, Cromartie filed a petition for writ of certiorari in United States Supreme Court, which was denied on November 1, 1999.  *Cromartie v. Georgia*, 528 U.S. 974, 120 S. Ct. 419 (1999), *r'hrg. denied*, 528 U.S. 1108, 120 S. Ct. 855 (2000).

### C.  State Habeas Proceeding

Cromartie filed a petition for writ of habeas corpus on May 9, 2000 in the Superior Court of Butts County.  Doc. 19-14.  An amended petition for writ of habeas corpus was filed on December 9, 2005.  Doc. 20-22.  Petitioner was represented by a team of attorneys from the Georgia Resource Center and pro bono counsel Martin McClain.  Both *specialized* in representing death row inmates in collateral appeals.

During his state habeas proceeding, Cromartie raised a claim that his rights were violated under *Brady* due to the State's alleged suppression of statements by two witnesses—Terrell

9

Cochran and Keith Reddick—that they saw Gary Young[5] running from the Madison Street Deli, one of the crime scenes, on the night of the crime.  The team of attorneys representing Cromartie, who had specialized in death penalty litigation for nearly a decade, did not raise a claim that his trial counsel was ineffective for failing to investigate and present evidence regarding his life and mental health for mitigation purposes.

After eight years of discovery, the habeas court held an evidentiary hearing on August 12-14, 2008.  Docs. 21-14 – 23-20.  Respondent subpoenaed Lucas to the hearing but he refused to testify before consulting his attorney.  No testimony was ever taken from Lucas; however, Cromartie to put into evidence Lucas's pardons and paroles file in which he stated Cromartie's friend, ostensibly Clark, shot the clerk at the Junior Food Store.  Docs. 21-41 at 40 Doc. 21-15 at 19, 29, 31.  Both parties submitted post-hearing briefs and proposed orders.  Docs. 23-32, 23-33, 23-34, 23-35, 23-36.  Nearly two years after the submission of the proposed orders, on February 9, 2012, the state habeas court entered an order denying relief.  Doc. 23-37 at 18.  The court dismissed

---

[5] Young was the owner of the handgun used by Cromartie during the crimes, and the individual Cromartie alleged committed the crimes.

10

Cromartie's *Brady* claim as procedurally defaulted, and alternatively concluded the claim was without merit.  Doc. 23-37 at 18.  Cromartie filed a motion for reconsideration based upon new testimony from trial witness Gary Young and, after further discovery and briefing, the state habeas court denied the motion on October 9, 2012.  Doc. 24-9.  The Georgia Supreme Court denied Cromartie's application for a certificate of probable cause to appeal (CPC) on September 9, 2013.  Doc. 24-14.

Cromartie filed a petition for writ of certiorari in the United States Supreme Court seeking review of the state court's determination of his *Brady* claim, which was denied on April 21, 2014.  *Cromartie v. Chatman*, __ U.S. __, 134 S. Ct. 1879 (2014).

### D.  Federal Habeas Proceeding

Cromartie filed his federal habeas petition on March 20, 2014.[6]  Doc. 1.  In this initial petition, Cromartie alleged in Claim II, 15 instances of ineffective assistance of trial counsel, none of which mentioned or alluded to a failure by trial counsel to

---

[6] Respondent filed a motion to dismiss the initial petition as untimely.  Doc.  9.  The district court denied the motion.  Doc. 42.

investigate and present evidence of Cromartie's life history and mental health.[7]  Doc. 1 at 16-17, 18.

On January 6, 2015, Petitioner filed a request to amend his petition and the district court granted that request on the same day.  Docs. 43, 44.  Subsequently, Petitioner amended his petition on June 22, 2014, and included a new claim, Claim X, that trial counsel were ineffective during the sentencing phase of trial regarding the investigation and presentation of Cromartie's life and mental health.  Doc. 62, at 55-57.  The amended petition goes on for an additional fifteen pages alleging the facts in support of Petitioner's new ineffective assistance of trial counsel claim.  *Id.* at 57-71.

Respondent filed his answer to the amended petition on July 22, 2015, and asserted that the new claim was unexhausted and procedurally defaulted because it was not raised in his state habeas proceeding.  Doc. 64 at 13.  However, after further research and consideration, Respondent requested permission on March 21, 2016, from the district court to amend his answer to assert a time-bar to Petitioner's new ineffective-assistance claim pursuant to §

---

[7] Cromartie was initially represented by the Georgia Resource Center and Martin McClain in his federal habeas proceeding. However, counsel was replaced in order to litigate certain portions of the timeliness challenge to the original petition.

28 U.S.C. 2244(d)(1). Doc. 74. Cromartie objected to the amendment. Doc. 75. This Court granted the request to amend on August 22, 2016, and determined Respondent's request to amend was not futile because Cromartie's new ineffective-assistance claim did not, pursuant to Federal Rule of Civil Procedure 15(c), relate back to a claim in his initial petition. Doc. 80 at 4-12. After full briefing of all claims, this Court denied Cromartie's request for federal habeas relief and declined to issue a COA as to any of Cromartie's claims. ECF No. 81.

Cromartie timely filed a motion for a COA with the Eleventh Circuit Court of Appeals on August 24, 2017. In a single-judge order, Cromartie's motion was denied. Cromartie then requested reconsideration of the denial of his motion for COA. His motion was then reviewed by a three-judge panel and was denied on March 26, 2018. The majority and the dissent agreed that Cromartie was not entitled to a COA on his *Brady* claim. Regarding the time-bar, the majority held that the ineffective-assistance claim in his initial petition was too general to place Respondent on notice of Cromartie's new ineffective-assistance claim and did "not share a 'common core of operative facts'" with his newly pled Claim X. App. 10-12 (quoting *Mayle v. Felix*, 545 U.S. 644, 664,125 S. Ct. 2562, 2574 (2005)).

13

Cromartie filed a petition for writ of certiorari in the United States Supreme Court from the Eleventh Circuit Court of Appeals, which was denied on December 3, 2018. *Cromartie v. Sellers*, U.S. ___, 139 S. Ct. 594 (2018).

### E.   Extraordinary Motion for New Trial Proceeding

On December 27, 2018, Cromartie filed his extraordinary motion for new trial in Thomas County Superior Court seeking DNA testing for the first time under O.C.G.A. § 5-5-41(c).  The trial court held a hearing on Cromartie's motion and on September 16, 2019, the trial court denied Cromartie's request for DNA testing.  Cromartie timely filed an application for discretionary appeal with this Court on October 11, 2019.  The Georgia Supreme Court summarily denied Cromartie's application on October 25, 2019.

### F.   Successive State Habeas Proceeding

With his execution six days away, Cromartie filed a successive state habeas petition alleging for the first time in the state courts his claim of ineffective assistance of trial counsel for failure to present mitigating evidence during the sentencing phase.  The state habeas court dismissed that petition on October 29, 2019 based on Georgia law finding that Cromartie could have

14

previously raised his new claim of ineffective assistance of trial counsel in his first state habeas proceeding.  The court found that neither case law nor a miscarriage of justice provided Cromartie a basis to overcome that bar.

Cromartie filed an application for certificate of probable cause to appeal and a motion for stay of execution.  On October 30, 2019, the Georgia Supreme Court entered a provisional stay of execution because the trial court did not have jurisdiction to enter the warrant for execution.  Two days later, on November 1, 2019, the trial court signed and filed an execution order setting Cromartie's execution for November 13, 2019.  Cromartie directly appealed that order but the Georgia Supreme Court denied the appeal and the CPC application on November 5, 2019.

### G.   42 U.S.C. § 1983  Proceeding

On October 22, 2019, Cromartie filed a complaint in this Court challenging Georgia's DNA statute, O.C.G.A. § 5-5-41(c).  Additionally, on October 24, 2019, Cromartie filed a corresponding motion to stay his execution scheduled for October 30, 2019 at 7:00 p.m. at the Georgia Diagnostic and Classification Prison.  This Court dismissed the complaint and denied the motion for stay on October 28, 2019.  Doc.

15

Subsequently, Cromartie filed a notice of appeal in the district court on October 29, 2019 and requested a motion to stay his execution.  The Eleventh Circuit Court denied the appeal and the motion for stay was denied on November 30, 2019 as moot.   On November 6, 2019, Cromartie filed a petition for rehearing en banc and requested another stay of his execution pending that motion, which was denied on November 8, 2019.

### H.  Rule 60(b) Motion

On November 8, 2019, Cromartie filed his current Rule 60(b) motion requesting this Court reopen his § 2254 application.  This response follows.

## ARGUMENT

### I.  Cromartie has failed to show that his § 2254 application should be reopened under Rule 60(b)(6) or that his proceedings should be stayed.

Cromartie is requesting that this Court reopen his § 2254 application under Rule 60(b)(6) to reconsider his unexhausted claim that trial counsel were ineffective with regard to presentation of mitigating evidence during the sentencing phase of his trial.  In support, Cromartie argues that he can show "extraordinary circumstances" to reopen his § 2254 application in four ways: (1) that his co-defendant Thaddaeus Lucas has

provided an affidavit stating he "overheard" co-defendant Corey Clark tell Gary Young that he shot Mr. Slysz; (2) reconsideration of his time-barred ineffective assistance of trial counsel claim regarding the presentation of mitigating evidence; (3) reconsideration of the ineffective assistance of his initial federal habeas counsel to overcome the time-bar of his underlying ineffective assistance of trial counsel claim regarding the presentation of mitigating evidence; and (4) a statement from Mr. Slysz's daughter expressing concern over whether Cromartie is guilty and requesting DNA testing.  Cromartie's first claim is clearly not enough to show he is "actually innocent" and the remaining claims are far from "extraordinary."  Accordingly, Cromartie's request to reopen his § 2254 application should be denied.

### A.   Standard of Review

Because Cromartie seeks to reopen his § 2254 application under Rule 60(b) for consideration of a time-barred claim, the Supreme Court has held such a request is allowed for consideration as it is not "inconsisten[t] with the habeas statute or rules." *Gonzalez v. Crosby*, 545 U.S. 524, 533 (2005).  However, as explained by the Eleventh Circuit because "[r]elief from 'judgment under Rule 60(b)(6) is an extraordinary remedy,'" it "requires

17

showing 'extraordinary circumstances justifying the reopening of a final judgment.'" *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (quoting *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996); *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)) (some quotation marks omitted).  And whether a petitioner has shown an "extraordinary circumstance" is left to the sound discretion of the Court.  *Id.*

Cromartie argues that he can prove an extraordinary circumstance through a claim of "actual innocence"—but actual innocence "is a narrow and well-defined *exception that will rarely be found to exist.*"  *Gonzalez*, 366 F.3d at 1274 (emphasis added). This "gateway should open only when a petition presents 'evidence of innocence *so strong* that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'"  *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)) (emphasis added).  Moreover, "[a]ctual factual innocence is required; legal innocence is not enough."  *Gonzalez, supra.*

## B.   Cromartie has not shown diligence

"Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite

showing." *McQuiggin*, 569 U.S. at 399. Also, "[c]onsidering a petitioner's diligence, not discretely, but as part of the assessment whether actual innocence has been convincingly shown, attends to the State's concern that it will be prejudiced by a prisoner's untoward delay in proffering new evidence." *Id.*

Cromartie claims he has been diligent in bringing this action because, despite his best efforts, Lucas would not speak with his counsel until now. However, Cromartie does not provide any evidence in support of this statement. Indeed it was Respondent who subpoenaed Lucas to the state habeas evidentiary hearing, not Cromartie. Doc. 21-15 at 19, 29. The fact that Lucas invoked his privilege against incrimination until consulting his lawyer does not show Cromartie has been diligent in seeking out information from Lucas. *Id.* at 31. Moreover, Cromartie had Lucas' alleged statement from his pardons and paroles file stating Cromartie's "friend," ostensibly Clark, shot the clerk—*which Cromartie submitted as an exhibit during the state habeas evidentiary hearing*. Doc. 21-41 at 40. Consequently, Cromartie has not pled sufficient facts to this Court showing he has been diligent in seeking information from Lucas regarding the Junior Food Store Crimes.

### C.   Cromartie has not provided evidence proving he is actually innocent of the crimes at the Junior Food Store.

Lucas' affidavit does not state, as alleged by Cromartie that he did not shoot Mr. Slysz or that Clark informed Lucas that he, Clark, shot Mr. Slysz.  Instead, his affidavit states he "overheard" Clark tell Gary Young he shot Mr. Slysz and that he, Lucas, did not "know for certain what happened that night because he [wasn't] in the store."  Doc. 95-1 at 3-4.  Moreover, Lucas' explanation for coming forward now with this information is contradicted by the record.  First, he claims he did not want the providing of this information to "ruin" his life, but he allegedly provided this information over twenty years ago to pardons and paroles.  Doc. 95-1 at 7-10.  Second, Lucas claims that he became "angry" recently when he read the news and people were saying Cromartie committed the shooting at the Junior Food Store.  *Id.* at 4.  But his statement is contradicted by his trial testimony and his statements to the police, because he certainly had no problem pointing his finger at Cromartie at trial, and he never provided any statement to the jury or the police, suggesting Clark, not Cromartie, shot Mr. Slysz.  Docs. 18-15 at 86-89, 125; 22-13 at 38-41.  This is clearly not proof of "actual innocence."

20

"As we stated in *Schlup*, '[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence].'" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S., at 332).  Clearly there are many credibility concerns with Lucas' testimony given its timing and that it is some respects implicitly contradictory to his testimony at trial.

As admitted by Cromartie, "[a] petitioner attempting to demonstrate his actual innocence must support his contention with 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" Doc. 95 at 17 (quoting *Schlup*, 513 U.S. at 324).  Cromartie's evidence is none of these things, nor is it even close.  Indeed, Lucas admits that he does not know what happened in the Junior Food Store as he was not in the store on the night of the crimes.  Doc. 95-1 at 3-4.

Contrary to Cromartie's assertion, there is overwhelming evidence of his guilt.  The shootings committed at the Madison Street Deli and Junior Food Store were nearly identical: both occurred late at night in a convenience store with only the clerk present; both clerks were shot in the head with the same weapon;

21

and at both a failed attempt to open the cash register occurred.
Cromartie confessed to being the shooter at the Madison Street
Deli to two individuals, was identified as the shooter at the Junior
Food Store by co-defendant Clark, and a similar shoeprint and his
thumb print were identified at the Junior Food Store crime scene.
And there was no evidence that Clark was at the Madison Street
Deli on the night of the crimes. Also, there were two eyewitnesses
to the Junior Food Store crimes who provided testimony
consistent with co-defendant Clark's testimony about the crimes.
Finally, none of the evidence Cromartie presented in state habeas
to undermine his conviction, and relied upon in his current
motion, was found to be credible by the state habeas court.

Cromartie's remaining claims of "extraordinary circumstance"
are not extraordinary in the least. His second and third claims
are merely a request for this Court to reconsider its previous
determination that this ineffective assistance of trial counsel
claim regarding mitigating evidence is time-barred. And his
fourth claim is based upon a letter from a victim's family member
complaining that Cromartie may not be guilty. As stated above,
because "[r]elief from 'judgment under Rule 60(b)(6) is an
extraordinary remedy,'" it "requires showing 'extraordinary
circumstances justifying the reopening of a final judgment.'"

*Arthur*, 739 F.3d at 628.  Cromartie's remaining claims are nothing more than belated run-of-the-mill habeas claims and plea for clemency.

## CONCLUSION

WHEREFORE, Respondent requests that this Court deny Petitioner's Motion to Reopen Habeas Corpus Application Pursuant to Federal Rule 60(b)(6) and request to stay this proceeding.

Respectfully submitted.

/s/ *Sabrina D. Graham*
Sabrina D. Graham

Christopher M. Carr
  *Attorney General of Georgia*
Beth A. Burton
  *Deputy Attorney General*
Sabrina D. Graham
  *Sabrina D. Graham*


Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 656-7659
sgraham@law.ga.gov

*Counsel for Respondent*

23

## CERTIFICATE OF SERVICE

I hereby certify that on November 11, 2019, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *Sabrina D. Graham*
Sabrina D. Graham